THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL JONES, Defendant-Appellant.

Second District   No. 2—91—1294

Opinion filed May 6, 1993.

G. Joseph Weller and Paul Alexander Rogers, both of State Appellate Defender's Office, of Elgin, for appellant.

Paul A. Logli, State's Attorney, of Rockford (William L. Browers and Martin P. Moltz, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

After a bench trial, defendant, Michael Jones, was convicted of unlawful possession of weapons by a felon (Ill. Rev. Stat. 1989, ch. 38, par. 24—1.1(a)) and sentenced to three years' probation. On appeal, defendant argues that the trial court manifestly erred in denying his motion to suppress evidence seized pursuant to a search that followed his warrantless arrest. We hold that, because the arresting officer had probable cause to believe that defendant was obstructing or resisting a peace officer (see Ill. Rev. Stat. 1989, ch. 38, par. 31—1), the seizure of the evidence was the result of a valid search incident to arrest. Therefore, we affirm.

On the evening of August 13, 1990, defendant was arrested on the property of the Fairgrounds housing project in Rockford. Later that evening, at the Rockford Public Safety Building, the police searched defendant and discovered four 20-gauge shotgun shells on his person. Before trial, defendant moved to suppress the evidence.

At the hearing on defendant's motion, Officer Jeffrey Houde of the Rockford police department testified that, at about 10 p.m. on the evening of August 13, 1990, he and Officer Simon Solis, who were working together in a marked patrol car, were dispatched to the parking lot of the Fairgrounds project in the 1000 block of School Street. The dispatcher told them that an unknown informant had telephoned the police to report that five or six black males, one of whom was carrying a shotgun, were exiting a light blue van in the lot.

As Houde and Solis pulled into the parking lot and stopped the car, they observed a light blue Chevrolet van in the lot, about 50 feet away from them. Four black men appeared to be entering the

van; one of these men, defendant, was near the front passenger door. At first, Houde focused his attention on a man later identified as Alex Woods, who was exiting the van's driver's door and reaching into his belt. Houde and Solis exited their squad car. Apparently aware of the squad car's presence, the four black men took off running from the area of the van. Houde, who believed that he had grounds to make an investigatory stop of the men, identified his office and called out to the men to halt. By now, three or four other squad cars were nearby.

After the order to halt, Woods fled west over a fence. Defendant kept running south. Houde, who believed that defendant was "obstructing" him, and Officer Robert Verruchi started chasing defendant. Houde was about 10 to 15 yards from defendant when the chase began. He chased defendant for about a "city block," including around the side of an apartment building. Defendant stopped and sat on a chair. Houde and Verruchi ordered defendant to stop, handcuffed him, and put him into a squad car. Directly afterwards, Houde ran to help Solis deal with resistance from Woods. Houde did not search defendant at the scene.

At the hearing, Houde acknowledged that, other than disobeying Houde's order to halt, defendant did nothing that appeared illegal. Defendant did not appear to be carrying anything as Houde chased him. Houde acknowledged that he reviewed and approved a report that Solis, a less experienced officer, wrote about three or four hours after the incident. The report stated that, upon their arrival, Houde and Solis saw four or five black men exiting the van. Houde testified that he believed his testimony was consistent with the report. He could not recall how closely he had reviewed Solis' report.

The parties stipulated that Rockford police officer Alan Asche would testify that, after defendant was taken into custody on August 13, 1990, a police search recovered four shotgun shells from defendant's front pants pocket.

Officer Verruchi testified that, on the evening of the arrest, he drove his squad car to the Fairgrounds project parking lot, arriving alone about a minute after Officer Houde. Houde radioed Verruchi that Houde had started chasing defendant. As Houde ran south in back of the buildings in the 1000 block of Hess Court, Verruchi ran south in front of these buildings. He saw defendant come out from between two buildings and sit down. Verruchi ordered defendant to stop; defendant complied. Two or three seconds after seeing defendant, Verruchi saw Houde, who was right behind defendant. Verruchi

helped Houde to handcuff defendant. He put defendant in a squad car but did not search defendant on the scene. At trial, Verruchi stated that he did not know whether any other officer searched defendant at the time. After defendant was in the squad car, Verruchi went to assist Solis.

The trial judge denied defendant's motion to dismiss, holding that, at the time of the arrest, the police had probable cause to believe that defendant was guilty of obstructing a police officer. The trial judge explained that the crucial factor was defendant's flight; had defendant not run from the police, the judge would have granted the motion to suppress.

At trial, the parties stipulated that in 1982, defendant had been convicted of burglary. The State called Officer Houde, whose testimony in the main repeated that which he had given at the suppression hearing. Officer Houde also explained that, as best he could recall, the suspects began running as the officers were exiting the squad car and ordering the men to halt. It was possible that defendant started to run before Houde did. Houde acknowledged that he could not say for certain whether the suspects started running because they saw the police cars or only because they heard the officers shout at them to stop. In chasing defendant, Houde passed about four buildings and saw defendant change direction twice. Apparently, defendant stopped running because he was tired; he was sweating when apprehended.

Officer Verruchi testified as he did at the suppression hearing. He stated that, by the time he arrived at the parking lot, Officer Houde had already started to chase defendant.

Officer Asche testified that, on the evening of August 13, 1990, he and another officer proceeded to the parking lot, where they observed defendant being apprehended. Before defendant was placed into Asche's squad car, a third officer very briefly patted down defendant before the officers went to aid Solis. The police recovered nothing from defendant on the scene. Later that evening at the public safety building, Asche recovered four 20-gauge shotgun shells from defendant's front pants pocket.

The trial court refused to change its decision on the motion to suppress. The court found defendant guilty, denied his post-trial motion, and sentenced him to three years' probation.

On appeal, defendant argues that the shells should not have been allowed into evidence because they were the product of an arrest without probable cause. Defendant concedes that Officer Houde's order to halt was lawful and that the arrest would have

been valid had the officers had probable cause to believe that defendant knowingly disobeyed the command to halt.

However, defendant argues that the weight of the evidence demonstrates that defendant took off running because he saw the police cars, and not because he heard any order to halt. Defendant notes testimony from which, he argues, the trial court should have inferred that the four suspects took off running before the police gave the order. Thus, because Officer Houde's belief that defendant was obstructing a police officer was based on defendant's failure to heed a lawful warning, defendant reasons that the timing of his flight negates any conclusion that there was probable cause to arrest defendant.

We conclude that the trial judge did not manifestly err in finding that, at the time of the arrest, the facts known to the police gave them probable cause to believe defendant was obstructing Officer Houde. As defendant raises no other grounds for reversal, we conclude that the shells were properly admitted as the product of a search incident to a lawful arrest.

■ A trial court's ruling on a motion to suppress will not be reversed unless it is manifestly erroneous. (*People v. Spann* (1992), 237 Ill. App. 3d 705, 708.) A police officer has probable cause to make an arrest when the totality of circumstances known to the officer would permit a reasonably prudent person to believe that the suspect has committed or is committing a crime. (*People v. Montgomery* (1986), 112 Ill. 2d 517, 525; *Spann*, 237 Ill. App. 3d at 708-09.) Because the test for probable cause is based on the facts known to the officer at the time of the arrest, facts unknown to the officer at the time regarding a defendant's subjective intent are not relevant to a probable-cause determination. *Village of Lincolnshire v. DiSpirito* (1990), 195 Ill. App. 3d 859, 865.

■ Thus, the crucial issue here is not whether defendant actually intended to resist or obstruct the police, but whether the trial court properly concluded that the facts known to the officers gave them probable cause to believe defendant knowingly resisted or obstructed authorized police actions.

Here the trial court concluded that Officer Houde had probable cause to believe that, because defendant attempted to escape the police after a lawful order to halt, defendant "knowingly resist[ed] or obstruct[ed] the performance by one known to the person to be a peace officer of any authorized act within [the officer's] official capacity." (Ill. Rev. Stat. 1989, ch. 38, par. 31—1.) Defendant concedes that Officer Houde's order to halt was an "authorized act"

because it was a legitimate exercise of Houde's investigative authority. (See generally *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.) However, he argues that the evidence shows he started running before Houde gave the command. Thus, he reasons, his flight was not in defiance of police authority, but was merely a reaction to the presence of the police. We disagree.

The evidence enabled the trial court to conclude that Officer Houde ordered defendant to halt, but defendant kept on running. Indeed, assuming *arguendo* that Houde somehow had no reason to believe that defendant heard the original order, defendant's continued attempts to elude Houde gave Houde probable cause to believe defendant was obstructing the performance of Houde's investigative duties. It is well settled that such flight is a form of resisting or obstructing a police officer. See *People v. Johnson* (1983), 94 Ill. 2d 148, 158; *People v. Holdman* (1978), 73 Ill. 2d 213, 222, *cert. denied* (1979), 440 U.S. 938, 59 L. Ed. 2d 496, 99 S. Ct. 1285.

The exact timing of defendant's flight is not crucial. Assuming he began to run before Houde's order to halt, the court could conclude that he responded to the order by continuing to flee. Even if defendant's original motivation for flight was the mere presence of the police, Officer Houde had probable cause to believe that defendant's continued evasion was in knowing defiance of the order to halt. Defendant's arrest was lawful, and the court properly denied his motion to suppress.

The judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

WOODWARD and COLWELL, JJ., concur.