# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Brannon*, 2013 IL App (2d) 111084

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JARRIET E. BRANNON, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-11-1084 |
| Filed<br>Modified upon<br>denial of rehearing | May 6, 2013<br><br>June 7, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The appellate court rejected defendant's contention that his counsel was ineffective in failing to move to suppress statements defendant made after he was given warnings on the ground that the officers used the "question first, warn later" tactic, since there was no direct evidence the officers violated the rule in *Seibert* by deliberately using that tactic to avoid the limits set forth in *Miranda*. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 09-CF-577; the Hon. Allen M. Anderson, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal    Thomas A. Lilien and Christopher McCoy, both of State Appellate Defender's Office, of Elgin, for appellant.

Joseph H. McMahon, State's Attorney, of St. Charles (Lawrence M. Bauer and Matthew J. Schmidt, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel    JUSTICE BIRKETT delivered the judgment of the court, with opinion.
Presiding Justice Burke and Justice McLaren concurred in the judgment and opinion.

**OPINION**

¶ 1     Defendant, Jarriet E. Brannon, appeals from his convictions of unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2008)), and unlawful possession of cannabis (720 ILCS 550/4(d) (West 2008)). He contends that the trial court erred in denying his motion to suppress physical evidence. He further maintains that his trial counsel was ineffective for failing to move to suppress statements he made to the police both before and after he was given *Miranda* warnings. Because the trial court properly denied defendant's motion to suppress and because defendant's trial counsel was not ineffective for failing to seek suppression of his statements, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3     The following facts are taken from the testimony at the hearing on defendant's motion to suppress physical evidence and at his bench trial. On February 23, 2009, at about 7:24 p.m., Officers Nick Gartner and Clark Johnson of the Aurora police department were patrolling in an unmarked squad car in a high-crime area known for its drug and gang activity. As they approached a retail food store located on North Avenue, Officer Gartner observed a vehicle, with its lights off, back out from the parking lot of the food store onto North Avenue. The vehicle then immediately pulled back into the lot of the food store and stopped. The officers observed two occupants in the vehicle, neither of whom was wearing a seat belt.

¶ 4     The officers followed the vehicle into the parking lot and pulled their squad car next to and somewhat behind the vehicle. Officer Gartner testified at the suppression hearing that he "believed" that they activated the emergency lights on the squad car. At the bench trial, he could not "recall 100 percent," but he "believe[d] possibly" that the emergency lights were activated. Defendant, who testified at the suppression hearing that the officers were wearing

blue jeans and black "shirts or something," was never asked if the emergency lights were activated. According to the officers, they both were wearing blue jeans and black tactical vests with Aurora police insignia on the front and back.

¶ 5 As the officers stopped adjacent to the vehicle, defendant exited the vehicle from the front passenger seat and began walking away from the vehicle. Officer Johnson, who had exited the squad car, ordered defendant to stop and reenter the vehicle, but defendant continued walking away. Officer Gartner, who thought defendant was going to flee, quickly walked around the front of the vehicle and cut him off.

¶ 6 Officer Gartner believed that defendant posed a risk to the officers' safety, based on defendant's actions and the fact that the area was a "known gang and drug area." Thus, he frisked defendant, patting down his jacket. Officer Gartner, who was carrying a flashlight because of the limited lighting in the area, used the flashlight to look defendant over while patting him down.

¶ 7 During the frisk, Officer Gartner felt a soft bulge in defendant's upper front jacket pocket. After feeling the bulge, Officer Gartner observed with the aid of the flashlight a clear plastic bag containing a "green, leafy substance" in the partially open jacket pocket. He did not place his hand in the pocket or pull the bag out prior to observing the bag and its contents. Although defendant testified at the suppression hearing that the pocket was closed, the trial court found Officer Gartner's testimony more credible and specifically found that the bag and its contents were visible to Officer Gartner. Based on his prior training and police experience, Officer Gartner concluded that the substance in the plastic bag was cannabis.

¶ 8 At that point, Officer Gartner arrested and handcuffed defendant and handed him over to Officer Johnson, who discovered in defendant's pocket a folded white packet that contained an "off-white substance, powdery substance." Officer Gartner proceeded to look into the vehicle, where he observed on the front passenger seat a plastic bag that contained several foil packets. The foil packets contained a "powdery substance." Officer Gartner seized the foil packets, and their contents later tested positive for the presence of heroin.

¶ 9 After Officer Gartner discovered the foil packets and showed them to Officer Johnson. Officer Johnson asked defendant, "Are you going to continue to lie to us about what you are doing?" Defendant responded, "No ... it's my stuff." Neither officer had advised defendant of his *Miranda* rights prior to his making this statement.

¶ 10 After completing the on-scene investigation, and releasing the driver, the officers had defendant transported to the Aurora police station. Once they arrived there, they met with defendant in an interview room. They then advised defendant of his *Miranda* rights and obtained his written waiver.

¶ 11 Following the *Miranda* procedure, at about 8:45 p.m., the officers interrogated defendant for about 20 minutes regarding his involvement with the heroin. Defendant revealed that he and the driver went to the food store and purchased the heroin. Defendant further stated that he intended to keep some of the heroin for his own use and sell the rest to support his habit.

¶ 12 Defendant was subsequently indicted on one count of unlawful possession of a controlled substance with intent to deliver within 1,000 feet of a church (count I) (720 ILCS

570/407(b)(1) (West 2008)), one count of unlawful possession of a controlled substance (count II) (720 ILCS 570/402(c) (West 2008)), one count of unlawful possession with intent to deliver cannabis (count III) (720 ILCS 550/5(d) (West 2008)), and one count of unlawful possession of cannabis (count IV) (720 ILCS 550/4(d) (West 2008)).

¶ 13    Prior to trial, defendant moved to suppress all the physical evidence seized subsequent to the frisk. Following an evidentiary hearing on the motion to suppress, the trial court denied the motion.

¶ 14    Following a bench trial, defendant was found guilty of count II and count IV and not guilty of count I and count III and sentenced to 42 months in prison. His posttrial motion was denied, and defendant filed this timely appeal.

¶ 15                                        II. ANALYSIS

¶ 16    Defendant raises the following issues on appeal: (1) whether the trial court erred in denying his motion to suppress all physical evidence discovered subsequent to his being frisked; and (2) whether his trial counsel was ineffective for failing to move to suppress his statements made in response to police questioning both before and after he was advised of his *Miranda* rights. We consider each issue in turn.

¶ 17    The trial court's ruling on the motion to suppress presents mixed questions of law and fact. *People v. Linley*, 388 Ill. App. 3d 747, 748 (2009). The trial court's findings of fact will be upheld on review unless they are against the manifest weight of the evidence, but a reviewing court remains free to undertake its own assessment of the facts in relation to the issues presented and may draw its own conclusions when deciding what relief to grant. *Linley*, 388 Ill. App. 3d at 748-49. The ultimate issue of whether to suppress is subject to *de novo* review. *Linley*, 388 Ill. App. 3d at 749.

¶ 18    On a motion to suppress, the defendant bears the burden of establishing a *prima facie* case that he was doing nothing unusual to justify the intrusion of a warrantless seizure or search. *Linley*, 388 Ill. App. 3d at 749. If the defendant makes the required showing, the burden shifts to the State to present evidence to justify the seizure or search. *Linley*, 388 Ill. App. 3d at 749. In this case, there is no dispute that defendant made a *prima facie* case, thus obligating the State to justify frisking defendant.

¶ 19    We begin our analysis of the first issue by noting that we may affirm the trial court's judgment on any basis supported by the record, regardless of the trial court's reasoning. *People v. Liekis*, 2012 IL App (2d) 100774, ¶ 23.

¶ 20    It is well established that the police are allowed to conduct a custodial search incident to an arrest for a traffic violation or petty offense. *People v. Fitzpatrick*, 2013 IL 113449, ¶ 19. Further, it is a petty offense to willfully fail or refuse to comply with any lawful order or directive of any police officer invested by law with the authority to direct, control, or regulate traffic. 625 ILCS 5/11-203 (West 2010).

¶ 21    In this case, the evidence shows that defendant was a passenger in a vehicle that he concedes was lawfully stopped for a traffic violation. When the vehicle was stopped, defendant immediately exited and began walking away. Even after he was ordered to stop

and return to the vehicle, defendant appeared to ignore the directive and continue to walk away.

¶ 22 The evidence further shows that the officers had activated the emergency lights on their squad car when stopping the vehicle. While Officer Gartner could not recall with certainty, he testified twice that he believed the lights were activated. At trial, Officer Johnson testified that the emergency lights were not activated. While this testimony contradicted Officer Gartner's testimony at both the suppression hearing and the trial, defendant cannot rely on such evidence on appeal, because he did not revive his suppression motion and request the trial court to reconsider its earlier ruling. See *People v. Brooks*, 187 Ill. 2d 91, 127-28 (1999). Although defendant testified to how the officers were dressed, he was never asked whether the lights were activated or not.

¶ 23 Based on this evidence, the officers had probable cause, prior to the search of defendant's jacket pocket, to arrest defendant for willfully failing or refusing to comply with a lawful order or directive, in violation of section 11-203. Because they had the authority to arrest him for a petty offense, they could conduct a search of his person. Therefore, the search of the jacket pocket, whether a frisk or otherwise, was valid.

¶ 24 Once the officers discovered the cannabis in defendant's jacket pocket, they had probable cause to arrest him for possession of cannabis. They were, in turn, authorized to search the vehicle for further evidence of the crime of drug possession. See *People v. Arnold*, 394 Ill. App. 3d 63, 79 (2009) (citing *Arizona v. Gant*, 556 U.S. 332 (2009)). They could do so irrespective of whether defendant was handcuffed at the time. *Arnold*, 394 Ill. App. 3d at 79. Therefore, the discovery of the heroin in the foil packets was lawful.

¶ 25 Additionally, the fact that the officers found the cannabis in defendant's jacket pocket, combined with the other suspicious behavior that occurred in an area known for drug activity, gave them probable cause to believe that the vehicle contained evidence of drug possession. Thus, they were justified in conducting a warrantless search of the vehicle, including the foil packets. See *People v. Slavin*, 2011 IL App (2d) 100764, ¶ 13. The discovery of the heroin was proper on this basis also.

¶ 26 Alternatively, we affirm the search of defendant's jacket pocket and the vehicle on a different basis. A passenger of a legally stopped vehicle is validly detained. *People v. Johnson*, 408 Ill. App. 3d 107, 120 (2010) (citing *Arizona v. Johnson*, 555 U.S. 323, 331 (2009)). A passenger who attempts to leave a lawfully stopped vehicle gives the police officer probable cause to arrest him for obstructing an authorized action by a peace officer (720 ILCS 5/31-1(a) (West 2010)). *Johnson*, 408 Ill. App. 3d at 122 (citing *People v. Holdman*, 73 Ill. 2d 213, 222 (1978)). This is so because the officer was justified in detaining the passenger at the time of flight. *Johnson*, 408 Ill. App. 3d at 122. Thus, where an officer has the right to detain a passenger of a vehicle stopped for a traffic violation and the passenger flees from the vehicle, the officer has probable cause to arrest the passenger for a violation of section 31-1(a).

¶ 27 In all of the cases justifying searches based on arrests under section 31-1(a), there were facts establishing that the officers reasonably believed that the passengers were aware of the officers' presence and police authority. See, *e.g.*, *Holdman*, 73 Ill. 2d at 222-23 (officers were

in uniform, drove marked squad car, and activated both emergency lights and siren); *Johnson*, 408 Ill. App. 3d at 124-25 (although officers were patrolling in plain clothes and unmarked car, they activated emergency lights); *People v. Jones*, 245 Ill. App. 3d 302, 304 (1993) (officer "identified his office"). Therefore, it must be "clear" to the officer that the defendant knew he was being stopped by the police. *Johnson*, 408 Ill. App. 3d at 125.

¶ 28    The facts here, as previously set forth, would lead a reasonable person to believe that defendant was aware of the officers' presence and authority. Thus, the officers could have reasonably concluded that he exited the vehicle in knowing disregard of the traffic stop. This alone was a sufficient basis for probable cause to arrest him for a violation of section 31-1(a). Additionally, the facts support a reasonable belief that defendant consciously ignored a police command to stop and return to the vehicle. See *Jones*, 245 Ill. App. 3d at 304. Accordingly, the officers had two lawful bases to arrest defendant for violating section 31-1(a) prior to the search of his jacket pocket.

¶ 29    Because the officers had probable cause to arrest defendant for a violation of section 31-1(a), the subsequent search of his jacket pocket was valid as being incident to that lawful arrest. Therefore, the search of defendant's jacket pocket was lawful, as was the seizure of the cannabis found therein.

¶ 30    As discussed above, once defendant could be arrested based on the cannabis, the officers were authorized to search the vehicle for further evidence of the crime of drug possession, notwithstanding the fact that defendant was handcuffed at the time. Therefore, the discovery of the heroin in the foil packets was lawful.

¶ 31    Additionally, as discussed above, the officers had probable cause to believe that the vehicle contained evidence of drug possession. Once they had such probable cause, they were authorized to search the vehicle, including the foil packets, without a warrant.

¶ 32    For the foregoing reasons, we hold that the trial court correctly denied the motion to suppress the evidence found both in defendant's jacket pocket and in the vehicle.

¶ 33    Defendant's second contention is that his trial counsel was ineffective for failing to move to suppress statements he made in response to police questioning both before and after he was given *Miranda* warnings. As to the first statement, defendant argues that he was subjected to custodial interrogation without first being given *Miranda* warnings. Defendant maintains that the second statement should be suppressed because the officers engaged in the "question first, warn later" tactic prohibited in *Missouri v. Seibert*, 542 U.S. 600 (2004).

¶ 34    A court applies the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), to determine if a defendant was denied the effective assistance of counsel. *People v. Givens*, 237 Ill. 2d 311, 330-31 (2010). To prevail under that test, the defendant must show both that his counsel was deficient and that such deficiency prejudiced the defendant. *Givens*, 237 Ill. 2d at 331. If it is easier to dispose of an ineffective-assistance claim on the ground that there was insufficient prejudice, then the court may proceed directly to the second prong and need not determine whether counsel's performance was defective. *Givens*, 237 Ill. 2d at 331.

¶ 35    The question of whether to file a motion to suppress evidence is traditionally considered a matter of trial strategy. *People v. Bailey*, 375 Ill. App. 3d 1055, 1059 (2007), *aff'd*, 232 Ill.

2d 285 (2009). Trial counsel's strategic decisions are generally protected by a strong presumption that the attorney's decisions reflect sound trial strategy rather than incompetence. *Bailey*, 375 Ill. App. 3d at 1059. To prevail on a claim that trial counsel was ineffective for failing to file a motion to suppress, a defendant must show a reasonable probability that the motion would have been granted and that the trial outcome would have been different. *Bailey*, 375 Ill. App. 3d at 1059. A defendant's appeal rises and falls with the merits of the motion to suppress that he proposes trial counsel should have presented. *Bailey*, 375 Ill. App. 3d at 1059.

¶ 36    Turning to the prewarning statement, the State has not argued that it was admissible. We agree that the prewarning statement was inadmissible because it was given in response to a question designed to elicit an incriminating response and there is no dispute that defendant was in custody at the time. See *People v. Peo*, 391 Ill. App. 3d 815, 818-19 (2009).

¶ 37    Reaching that conclusion, however, addresses only the first prong in the bifurcated analysis of ineffective assistance of counsel. The second prong, that there is a reasonable probability that a different result would have occurred, has not been realized. We do not believe that the suppression of defendant's prewarning statement would have altered the outcome of defendant's trial.

¶ 38    Defendant's prewarning statement, "it's my stuff," was a somewhat vague and generalized response to the question of whether he was going to continue to lie to the officers. While the statement arguably referred to the heroin in the vehicle, it was not so specific as to be directly inculpatory in that regard. Further, when that statement is viewed in light of the independent evidence of defendant's possession of heroin, it could not have been outcome-determinative. The other evidence consisted of the heroin that was found where defendant was seated in the vehicle just prior to his exit. Further, the fact that defendant exited the vehicle when it was stopped suggests he knew of, and was trying to distance himself from, the heroin therein. Also, defendant possessed over 30 grams of cannabis on his person. When we consider all of the other evidence, we cannot say that there is a reasonable probability that the suppression of the prewarning statement would have changed the result of the trial. This is so notwithstanding the trial court's terse reference to that statement in making its findings. Accordingly, there was no prejudice resulting from trial counsel's failure to seek suppression of the prewarning statement.

¶ 39    On the other hand, the postwarning statements were more comprehensive and detailed in terms of defendant's possession of the heroin. Because the other evidence of heroin possession was circumstantial, the postwarning statements might have had an impact on the outcome of the trial. That is, if trial counsel was deficient for failing to move to suppress those statements, the deficiency was likely prejudicial. Thus, we must decide whether trial counsel was deficient.

¶ 40    The Illinois Supreme Court, in adopting the *Seibert* analysis, has concluded that Justice Kennedy's concurrence resolved the case on the narrowest ground and is therefore controlling authority. *People v. Lopez*, 229 Ill. 2d 322, 360 (2008). In applying that concurrence, a court must first determine whether the police deliberately used a "question first, warn later" technique when interrogating a defendant. *Lopez*, 229 Ill. 2d at 360. If there

is no evidence to support a finding of deliberateness on the part of the police, the *Seibert* analysis ends. *Lopez*, 229 Ill. 2d at 360. If there is such evidence, the court must consider whether curative measures were taken, like a substantial break in time and circumstances between the prewarning and postwarning statements, such that the defendant would be able to distinguish the two contexts and appreciate that the interrogation has taken a new turn. *Lopez*, 229 Ill. 2d at 360-61.

¶ 41 Regarding step one, our supreme court has adopted the analysis from *United States v. Williams*, 435 F.3d 1148 (9th Cir. 2006), for determining whether, in the absence of direct evidence, deliberate misconduct occurred during the interrogation procedure. *Lopez*, 229 Ill. 2d at 361. In applying that approach, a court should consider any subjective evidence, such as an officer's testimony, along with the objective evidence to determine whether a question first, warn later interrogation procedure was used to undermine the *Miranda* rule. *Lopez*, 229 Ill. 2d at 361. In terms of assessing the objective evidence, a court should consider such factors as the timing, setting, and completeness of the prewarning interrogation, the continuity of police personnel, and the overlapping content of the prewarning and postwarning statements. *Lopez*, 229 Ill. 2d at 361-62.

¶ 42 Applying this analysis to our case, we conclude that there was no direct evidence that the officers engaged in a question first, warn later approach to deliberately circumvent the strictures of *Miranda*. Nor is there is any evidence that the officers had a subjective mindset in that regard.

¶ 43 As to the objective evidence, the timing of the initial questioning was over an hour before the subsequent interrogation and occurred as part of an on-street encounter in which the officers were attempting to quickly sort out whom to detain for possession of the heroin found in the vehicle, as well as determine the extent of the criminal conduct of both defendant and the driver. This is borne out by the fact that defendant was ultimately arrested while the driver was allowed to leave. This timing evidence supports the conclusion that the questioning was spontaneous and not part of a deliberate plan to avoid *Miranda*.

¶ 44 The setting in which the prewarning question occurred also supports such a conclusion. The question was asked under circumstances in which the officers were conducting an on-street investigation in a high-crime area and were faced with a suspect who was obviously not cooperating. This was not a situation where the police had detained a suspect, removed him to an optimal interrogation setting, and then conducted an orchestrated interrogation. This is exactly the type of situation recognized by Justice Kennedy as an exception to the rule in *Seibert*, where an officer " 'may not plan to question the suspect or may be waiting for a more appropriate time.' " *Lopez*, 229 Ill. 2d at 364 (quoting *Seibert*, 542 U.S. at 620 (Kennedy, J., concurring in the judgment)). Nor is there any indication here that the officers were operating from a policy of question first, warn later. Thus, the setting here strongly suggests that the prewarning questioning was merely spontaneous as opposed to part of a deliberate plan.

¶ 45 Additionally, the prewarning interrogation was far from complete. Rather, it consisted of essentially one question designed to get defendant to tell the truth. As compared to the far more extensive and focused interrogation that occurred later, the on-scene questioning was

limited and spontaneous. We consider this particular factor as especially supportive of the conclusion that the officers were not deliberately trying to dodge *Miranda*.

¶ 46 As to the overlapping content of the prewarning and postwarning statements, the prewarning statement, as noted, was vague; only the postwarning statements specifically pertained to the possession of the heroin. Further, the bulk of the postwarning statements pertained to defendant's involvement in drug dealing as opposed to mere possession. This factor favors finding that the officers were not deliberately avoiding *Miranda*.

¶ 47 The continuity of police personnel supports a finding of deliberateness to the extent that both officers conducted both the prewarning and postwarning questioning. This factor alone, however, is insufficient to show that the officers violated the rule in *Seibert* and is outweighed by the totality of the other factors.

¶ 48 Based on the foregoing consideration of the factors enunciated in *Lopez* in light of the facts of this case, we conclude that there is insufficient evidence to show that the officers deliberately engaged in the question first, warn later technique disapproved by *Seibert*. Accordingly, there is no need to analyze whether there were any curative measures employed.

¶ 49 Because the evidence is insufficient to support a finding that the officers violated the rule set forth in *Seibert*, there was no reasonable basis to move to suppress the postwarning statements. Therefore, trial counsel was not ineffective for failing to do so.

¶ 50                                             III. CONCLUSION
¶ 51 For the reasons stated, we affirm defendant's convictions.


¶ 52 Affirmed.