NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 170883-U

NO. 4-17-0883

FILED
April 23, 2020
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| TYRE BELL, | ) | No. 16CF156 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justice Turner and Justice Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, holding the State proved defendant guilty beyond a reasonable doubt of two offenses: driving with a suspended license and obstructing a peace officer.

¶ 2    In October 2016, following a bench trial, the court found defendant, Tyre Bell guilty of driving with a suspended license (625 ILCS 5/6-303(a) (West 2016)), a Class 4 felony, and obstructing a peace officer (720 ILCS 5/31-1(a) (West 2016)), a Class A misdemeanor. In November 2017, the court imposed the following sentence: 24 months' probation; 180 days' incarceration in the Livingston County jail with credit for 3 days and 90 days suspended; 50 hours' community service; and fines and fees. Defendant filed a motion to reconsider his sentence the next day, which the trial court denied on December 4, 2017.

¶ 3        On appeal, defendant argues the State failed to prove him guilty beyond a reasonable doubt of either offense: driving with a suspended license or obstructing a peace officer. We disagree and affirm the convictions.

¶ 4                                I. BACKGROUND

¶ 5        In May 2016, the State charged defendant with two counts: driving on a suspended license (625 ILCS 5/6-303(a), (d) (West 2016)), a Class 4 felony, and obstructing a peace officer (720 ILCS 5/31-1(a) (West 2016)), a Class A misdemeanor. After defendant waived his jury trial right, the matter proceeded to a bench trial in October 2016.

¶ 6        The State called Detective Markus Armstrong as its lone witness. Armstrong testified he previously held the position of patrol officer and worked in that capacity in April 2016. Armstrong stated he worked routine patrol in Pontiac, Illinois, on April 13, 2016, at 7:20 p.m. when he observed a black 2000 Buick Regal traveling ahead of him at a high rate of speed. While pursuing the speeding vehicle, Armstrong called the Livingston County Emergency Services and Disaster Agency (LivCom) to run the license plates. Armstrong learned the vehicle belonged to defendant and defendant's license and the license plates were suspended. When the vehicle pulled into a driveway, the driver exited the vehicle. Exiting his marked patrol car about 15 feet away, Armstrong recognized the defendant as the driver. Armstrong called defendant by name and defendant ran behind the house. Armstrong radioed for backup, informing other officers defendant had just run from him and providing them with his direction of flight, but neither Armstrong nor other officers were able to locate defendant.

¶ 7        Armstrong explained he recognized defendant and knew his name from about a dozen prior interactions with him professionally and personally in the community. Armstrong further testified his patrol car video captured much of his pursuit of defendant's vehicle. The

video showed defendant's car, the black 2000 Buick Regal, but the video did not show the driver. The video was admitted as defendant's exhibit No. 1. Armstrong testified he forwarded information about the incident to the state's attorney's office and it filed charges against defendant.

¶ 8    Defendant presented an alibi defense. He confirmed his driver's license was suspended. Likewise, he confirmed he owned the vehicle depicted in the police video dated April 13, 2016. However, he denied driving the vehicle that day. Defendant testified he was in Kankakee that day at his girlfriend's mother's house. He stated he and his girlfriend, Kaylee Dittmer, went to Kankakee to visit her mother and have their children stay with her while defendant served 20 days in the Livingston County jail. Defendant testified he spent three days in Kankakee and returned on April 19, 2016, when he turned himself in at 7 p.m. Defendant acknowledged he previously interacted with Detective Armstrong, explaining he often saw him at Wal-Mart and the two would sometimes talk.

¶ 9    Defendant testified four or five other people had access to his car because he left it unlocked with the keys in the glove compartment. He stated his brother drives his car and the two share similar shape and size, although defendant said he was taller than his brother. Defendant testified when he returned from Kankakee and realized his car was missing, he asked his friends about it, but none knew where his car was. Defendant did not contact the police when he returned because he "figured it was going to show up" or "somebody was playing a joke or something." He testified he finally learned what happened to his car when he received notice through the mail that his car had been impounded.

¶ 10    Kaylee Dittmer testified that on April 13, 2016, she and defendant were at her mother's fiancé's house in Kankakee, Illinois. She testified she drove defendant there and back

in her car. She said the two left on April 11, 2016, and returned on April 14, 2016, at 5 p.m. Dittmer testified no one else was in the vehicle with her and defendant. She stated her and defendant's children stayed with her grandmother while she and defendant traveled to Kankakee for a few days. Dittmer explained she and defendant went to Kankakee for a birthday party for her mom's fiancé's niece and to visit Dittmer's mother. Dittmer testified she was sure the birthday party occurred on April 12, 2016, and she was "positive" it fell on a weekend "because that's when my mom was actually off was on the weekend." Dittmer gave conflicting statements about whether she previously told police about defendant's alibi or provided them with other corroborating witnesses. Dittmer's testimony concluded defendant's presentation of evidence.

¶ 11 In closing, the State reiterated how Detective Armstrong positively identified defendant driving on April 13, 2016, and defendant fled from him, making him unable to further investigate the incident. The State argued Armstrong provided a strong identification of the defendant because of the time of day, his unobstructed view of defendant, and his prior community interactions with defendant. Finally, the State argued neither defendant's nor Dittmer's testimony was credible evidence. The State, for example, noted that Dittmer was adamant the birthday party occurred on April 12, 2016, and she was equally insistent that it fell on a weekend. However, the calendar showed April 12, 2016, was a Tuesday.

¶ 12 Defense counsel, on the other hand, argued Detective Armstrong misidentified defendant as the driver because he expected to see the vehicle's owner as the driver. Counsel questioned whether Armstrong actually had a good view of the driver since it was dusk and the driver wore a hat. Counsel posited that another person drove defendant's car that day, since defendant testified he allowed at least four or five other people to drive his vehicle. Similarly, counsel explained defendant did not inquire into his car's whereabouts because he assumed a

friend had it. He finally argued defendant's and Dittmer's testimony established defendant could not have been the driver because they were in Kankakee, Illinois.

¶ 13        The court found "the State met its burden of proof" and found the defendant guilty as charged. The court explained its decision on the record, concluding "Detective Armstrong was very clear and credible in his testimony," describing how he saw defendant driving and fleeing from him on April 13, 2016. Indeed, the court stated, "I certainly thought that Detective Armstrong was very credible" and "not the least bit hesitant about his identification of the Defendant." The court noted the video showed it was bright enough for Armstrong to easily recognize the driver when he exited the vehicle. Ultimately, the court credited Armstrong's "testimony firsthand having seen Defendant driving, verifying that he is on a suspended license and then *** fleeing from the vehicle."

¶ 14        The court next addressed defendant's and Dittmer's alibi testimony, finding it not credible. The court observed, "[T]he problem is that they didn't have their stories straight with each other. And if they are going to get up here and concoct a story they need to make sure that their stories are consistent." For instance, the court noted the two gave different dates and reasons for visiting Kankakee—defendant saying they went there to spend time with their kids before he went to jail, and Dittmer saying they went there alone for a birthday party while the kids stayed with her grandmother. The court concluded: "I honestly don't believe, I don't believe [defendant] or Miss Dittmer because their stories are not consistent with each other." After rendering the guilty verdicts, the court ordered a presentence investigation report and continued the matter for sentencing.

¶ 15        Following several delays, the court held a sentencing hearing in November 2017 and sentenced defendant to 24 months' probation, 180 days' incarceration in the Livingston

County jail with credit for 3 days and 90 days suspended, 50 hours' community service, and fines and fees. Defendant filed a motion to reconsider his sentence, but the court denied the motion.

¶ 16    This appealed followed.

¶ 17                              II. ANALYSIS

¶ 18    Defendant challenges his convictions for driving while suspended and obstructing a peace officer, arguing the State failed to prove him guilty beyond a reasonable doubt. We disagree and affirm the trial court's judgment.

¶ 19    "The due process clause of the fourteenth amendment to the United States Constitution requires that a person may not be convicted in state court 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he was charged.' " *People v. Cunningham*, 212 Ill. 2d 274, 278, 818 N.E.2d 304, 307 (2004) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)). When a defendant appeals his convictions, arguing the State failed to satisfy this burden of proof, a reviewing court will not retry the defendant but asks " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Cunningham*, 212 Ill. 2d at 278 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Testimony from one credible eyewitness can provide proof beyond a reasonable doubt to sustain a conviction. *People v. Smith*, 185 Ill. 2d 532, 541, 708 N.E.2d 365, 369 (1999). Specifically, when a conviction rests "on eyewitness testimony, a reviewing court must decide whether, in light of the record, a fact finder could reasonably accept the testimony as true beyond a reasonable doubt." *Cunningham*, 212 Ill. 2d at 280. But in applying this standard,

we will neither reweigh evidence nor judge witness credibility; rather, we defer to the fact finder's credibility determinations. See *Smith*, 185 Ill. 2d at 542.

¶ 20                              A. Driving With a Suspended License

¶ 21        In order to prove defendant guilty beyond a reasonable doubt of driving with a suspended license, the State had to establish two elements: (1) defendant drove a motor vehicle on Illinois roads (2) while his driver's license or privileges had been suspended. *People v. Jackson*, 2013 IL 113986, ¶ 16, 983 N.E.2d 1027. Defendant concedes the second element and contests only the first—he drove a car on a Pontiac, Illinois thoroughfare. Specifically, defendant contends Detective Armstrong's uncorroborated testimony proved insufficient to secure a conviction, especially since police never apprehended the driver, and he and his girlfriend testified they were in Kankakee when the offense occurred.

¶ 22        As defendant's argument implies, the court's guilty verdict rested, at least partly, on Detective Armstrong's testimony that he observed defendant driving a car in Pontiac, Illinois, on April 13, 2016. Armstrong testified he saw a speeding black 2000 Buick Regal; as he gave pursuit, he confirmed defendant owned the vehicle; and he observed the driver exit the vehicle. Armstrong testified he recognized the driver to be defendant. He stated he had an unobstructed view of defendant exiting the car and as defendant exited, he looked at Detective Armstrong. When Detective Armstrong called to defendant by his first name, he fled. Detective Armstrong explained he previously interacted with defendant in the community at least a dozen times and knew his name. Moreover, a video confirmed Armstrong pursued a black 2000 Buick Regal and defendant testified the vehicle depicted in the video was, in fact, his car.

¶ 23        The trial court found "Detective Armstrong was very clear and credible in his testimony." It observed "Detective Armstrong was very certain who he saw." Ultimately, the

court credited Armstrong's testimony and his version of events. We defer to that determination because judging witness credibility lies within the fact finder's purview as it hears the testimony firsthand and watches the witness testify. See *Best v. Best*, 223 Ill. 2d 342, 350-51, 860 N.E.2d 240, 245 (2006) ("A reviewing court will not substitute its judgment for that of the trial court regarding credibility," because "it is in the best position to observe the conduct and demeanor of *** witnesses."). More importantly, though, we will not disturb the trial court's assessment of Detective Armstrong's credibility because a fact finder "could reasonably accept [his] testimony as true beyond a reasonable doubt." *Cunningham*, 212 Ill. 2d at 280.

¶ 24    In the same vein, the trial court rejected defendant's and Dittmer's inconsistent testimony as not credible because the two provided divergent stories about when and why they were in Kankakee. While defendant and Dittmer agreed they were in Kankakee on April 13, 2016, they disagreed on just about everything else. Defendant stated he had already been in Kankakee three days by April 13, 2016, and he stayed there until April 19, 2016, when he had to return to report to the Livingston County jail. Defendant's reason for going to Kankakee was twofold: one, taking his children to stay with Dittmer's mother while he served 20 days in jail; and, two, spending time with his children while visiting Dittmer's mother. Dittmer, on the other hand, testified she and defendant traveled to Kankakee alone, without children, on April 11, 2016, and they returned on April 14, 2016 at 5 p.m. She testified she remembered the exact date and time they returned because that was when she had to pick up the children from her grandmother. Dittmer's reason for her and defendant's trip to Kankakee was a birthday party for her mother's fiancé's niece. Although there were other inconsistent and less than credible details from defendant's and Dittmer's testimony, we need not meticulously detail them here. We can conclude the court reasonably rejected defendant's and Dittmer's testimony when it said: "I just

don't think that the story about being in Kankakee is that credible." We defer to the trial court's decision to reject defendant's and Dittmer's alibi testimony. See *Cunningham*, 212 Ill. 2d at 280. Consequently, viewing the evidence in the light most favorable to the State, we can say a rational fact finder could find the crime's contested essential element—defendant driving a car on Illinois roads—proved beyond a reasonable doubt. See *Cunningham*, 212 Ill. 2d at 278.

¶ 25                                    B. Obstructing a Peace Officer

¶ 26          To prove defendant guilty beyond a reasonable doubt of obstructing a peace officer the State had to show defendant knew Detective Armstrong was a police officer and he knowingly thwarted Armstrong from performing an authorized act within his official capacity, *i.e.*, detaining defendant for driving on a suspended license. 720 ILCS 5/31-1(a) (West 2016); see also *People v. Jones*, 245 Ill. App. 3d 302, 307, 613 N.E.2d 354, 357 (1993) (instructing flight from a police officer, after being given a lawful directive to do otherwise, is a form of resisting or obstructing a police officer). Much of the above evidence supports this conviction. Specifically, Detective Armstrong testified he followed defendant's speeding vehicle, he verified the vehicle belonged to defendant who had a suspended license, and he verified the vehicle had suspended license plates. That information allowed Armstrong to detain defendant. See 625 ILCS 5/3-701(a)(1), 6-303(a), 7-402 (West 2016). Armstrong also testified he was wearing his uniform and driving a marked squad car, but defendant ran away when he yelled out his first name. Detective Armstrong stated he previously interacted with defendant and defendant confirmed he knew Armstrong to be a police officer. As noted above, the trial court found Detective Armstrong's testimony credible and based the convictions upon it. See *Smith*, 185 Ill. 2d at 541 ("The testimony of a single witness, if it is positive and the witness credible, is sufficient to convict."). Because Detective Armstrong provided credible eyewitness testimony

that defendant knew he was a police officer yet evaded him while Armstrong was performing an authorized act in his official capacity, stopping the defendant for having a suspended driver's license and license plates, the State met its burden of proving defendant guilty beyond a reasonable doubt of obstructing a peace officer. The defendant's on-foot flight from a police officer under the facts of this case was an act of obstruction sufficient to warrant conviction. See *People v. Holdman*, 73 Ill. 2d 213, 222, 383 N.E.2d 155, 159 (1978).

¶ 27 Viewing all the evidence in the light most favorable to the State and deferring to the trial court's credibility determinations, we hold the evidence reasonably supports findings of guilt beyond a reasonable doubt for the offenses of driving with a suspended license and obstructing a peace officer. See *Cunningham*, 212 Ill. 2d at 278. Based on the above evidence, a rational fact finder could have found the State proved all essential elements of the charged crimes beyond a reasonable doubt. See *Smith*, 185 Ill. 2d at 541.

¶ 28 III. CONCLUSION

¶ 29 For the reasons stated, we affirm the trial court's judgment.

¶ 30 Affirmed.